## In re HAAS CO.

### TAYLOR v. ZIEGENHAGEN.

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

#### No. 1,042.

1. CORPORATIONS—VALIDITY OF MORTGAGE—SECURING DEBTS OF STOCKHOLDERS.

A corporation has no power to execute its notes, secured by a mortgage of its property, for individual debts of its stockholders incurred in the purchase of their stock, to the exclusion of creditors of the corporation, although their claims arose after the mortgage was executed and recorded.

Appeal from the District Court of the United States for the Northern District of Illinois.

The Haas Company, a corporation organized under the laws of Illinois, October 24th, 1892, with an authorized capital stock of eighteen thousand dollars, and engaged in a soda water manufacturing business, was, on or about the 22nd day of December, 1902, adjudicated a bankrupt, and its property put into the hands of a receiver pending the appointment of a trustee. Thereupon appellee, mortgagee under a chattel mortgage, filed his petition, praying that the receiver be directed to turn over to him all the personal property described in the mortgage which was made to secure notes aggregating the sum of two thousand dollars. The property covered constituted the entire assets of the company. The trustee answered, challenging the validity of the mortgage, and on hearing before the referee, an order was recommended denying the petition; but on exceptions in the District Court, this recommendation was overruled, and the trustee directed to pay to the petitioner the proceeds of the sale, a sale having already taken place. From this order the appeal is prosecuted.

The finding of facts by the referee, about which there is no dispute, is as follows:

Prior to and on March 5th, 1902, the Haas Company was a corporation having a capital stock $18,000.00 divided into 180 shares of $100.00 each, of which Mr. Charles Ziegenhagen was the owner of 119 shares, Mrs. Lena Haas was the owner of 60 shares and Rosina Ziegenhagen was the owner of 1 share, the last named persons being the owners of all the shares of stock and the directors and officers of the corporation. At a meeting of the said directors, on the 5th day of March, 1902, at which all the directors, stockholders and officers were present, the President Charles Ziegenhagen, stated that

he had received an offer of $3500.00, for all the capital stock of the Company, payable as follows: $1500.00 cash, balance in 1, 2, 3 and 4 years. After discussing the matter, the other stockholders agreed to assign their stock in blank, and deliver the same to Mr. Ziegenhagen in order that he might make the sale, and it was decided and agreed that Charles Ziegenhagen be authorized to make the sale upon the terms above stated.

The foregoing facts appear from the record of the minutes of the corporation for March 5th, 1902. It also appears from the testimony of the petitioner, Charles Ziegenhagen, and the testimony of Frederick H. Teeple, that the negotiations for the sale of this stock had been going on for some time prior to March 5th, 1902, between Charles Ziegenhagen and Frederick H. Teeple, the latter being the proposed purchaser and that an oral agreement was made prior to the meeting of March 5th, 1902, between Ziegenhagen and Teeple, which provided that Teeple was to purchase the stock and to pay $1500.00 cash and to give notes for the balance.

At the Directors' meeting above referred to, held on March 5th, 1902, Charles Ziegenhagen, Lena Haas and Rosina Ziegenhagen resigned as directors and officers of the corporation, the resignations to take effect March 6th, 1902, at 12:00 o'clock noon. The records of the corporation show what purports to be the minutes of the meeting of the stockholders of the Haas Company, held "pursuant to notice." It is stated that there were present at said meeting, the following named stockholders:

Frederick H. Teeple .................................. .... 178 shares
Frank W. Teeple .................................... ..... 1 share
Frederick Matz ...................................... 1 share.

The record is silent as to the date or day on which said meeting was held. The minutes of this meeting show that the parties named as stockholders, elected themselves as directors of the corporation for the period of one year. The evidence shows that none of the stock was turned over by Ziegenhagen until the 7th day of March, 1902, but the minutes of the corporation show that on the 6th day of March, 1902, a meeting of the new directors last named, was held pursuant to notice. At that meeting, the directors were elected officers of the corporation: Frederick H. Teeple, President and Treasurer, Frederick Matz, Secretary, and a resolution was passed as follows: "That the officers of this Company be and they are hereby authorized to execute a chattel mortgage for and in the name of the Company in favor of Charles Ziegenhagen upon the property of the Company to secure its five notes dated the 7th day of March, A. D. 1902 one—for $250, due in six months after date one for $250, due twelve months after date—one for $250, due eighteen months after date—one for $250, due twenty-three months after date—one for one thousand dollars due two years after date all of said notes to bear interest at the rate of 5% per annum and 7% per annum after maturity." On the 7th of March Ziegenhagen delivered the 180 shares of stock of the corporation to Teeple and the others purporting to be stockholders of the Company and received from Teeple, $1500.00 in cash, and notes and mortgage of the Haas Company for the balance, and a chattel mortgage as set forth in said petition.

On March 7th, when the original stock was turned over by Ziegenhagen, there was no indebtedness against the Haas Company.

I find that, at the time the meeting of March 6th, 1902, was held. Frederick H. Teeple and the others who purported to act as stockholders and directors were not the stockholders of the corporation and did not become stockholders or directors by right until the 7th day of March, 1902.

I further find that the indebtedness to Ziegenhagen was the indebtedness originally of Frederick H. Teeple and that no consideration whatever passed from Ziegenhagen to the Haas Company, a corporation, and that the notes and mortgage in controversy, were wholly without consideration, passing to the Haas Company and that the Haas Company, even through its authorized directors or managers, had no authority or power to make such notes and mortgage and that the petitioner, Ziegenhagen, had knowledge of all these facts when he turned over his stock and took the chattel mortgage and notes.

My conclusion is that the action of the directors and officers in giving the mortgage, was wholly unauthorized and ultra vires and if not absolutely void

as to the corporation, the said notes and mortgage should be held as void against the rights of even subsequent creditors.

The only further fact of consequence is that at the time of the giving of the chattel mortgage, the company was free from debt; the creditors represented by the trustee here having become such since the mortgage was put on record.

William E. Oneill, for appellant.
J. G. Grossberg, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court:

The sole question raised by this record is this: Is it within the lawful power of shareholders of a corporation, to the exclusion of creditors of the corporation, subsequent in point of time to the transaction, to use the notes, and pledge the assets of the corporation, toward paying the shareholders' individual debts contracted in the purchase from others of such shares?

We think not. The corporation, as a statutory person, with power to transact business, invite credit, incur obligations, and to discharge them, is an entity entirely distinct from its individual shareholders, and from their power to transact business, invite credit, incur obligations, and to discharge the same. The shareholders may, it is true, out of the assets of the corporation, declare and pay dividends; or, the affairs of the corporation being wound up, divide among themselves its capital and assets; but dividends mean the division not of capital and assets as such, but of earnings; and a final division of capital and assets means that the corporation will invite no further credit. Under the name of dividends there can be no lawful division of assets and capital that would impair the rights of creditors; and so long as the corporation is a going concern, there can be no lawful division of capital and assets that would diminish the security upon which continuing or future credit will be presumably based.

The notes and mortgage under consideration here are in no sense a dividend; they do not pretend to be a division of earnings. Nor are they a final distribution of capital and assets; the corporation remained a going concern, and invited the subsequent credit which the trustee now represents. Unless shareholders may invade, at will, the capital and assets of the corporation, appropriating them with impunity to the payment of their individual debts, the transaction complained of by the trustee cannot be sustained.

But it is said that the creditors represented by the trustee in this case had knowledge of the existence of the mortgage, and must therefore have extended their credit with notice of the facts. The contention clearly embodies a non sequitur. Knowledge of the presence on the records of the mortgage does not imply notice that out of the capital or assets of the corporation the shareholders were paying their individual debts. The mortgage on file, so far as the creditors knew, may have been executed for corporate purposes, its avails remaining somewhere among the corporate assets.

The order of the District Court is reversed, and the case remand-

ed with instructions to enter an order denying the petition of appellee, and to subject the proceeds of the sale, first to the payment of the corporation's just debts.