John **WALTENBERG,** Plaintiff,

v.

The **NEW YORK CITY DEPARTMENT OF CORRECTION** et al., **Defendants.**

No. 73 Civ. 5404.

United States District Court, S. D. New York.

May 6, 1974.

42

John Waltenberg, pro se.

Adrian P. Burke, Corp. Counsel, New York City, for defendants; Thomas F. Burchill, New York City, of counsel.

GURFEIN, District Judge.

A state prisoner, incarcerated at the Clinton Correctional Facility, Dannemora, New York, brings this complaint against the New York City Department of Corrections, former Mayor John V. Lindsay, former Commissioner of Corrections, George McGrath, and former Warden of Manhattan House of Detention (Tombs), Albert Glick. The plaintiff alleges:

"At approximately 1:30 A.M., on April 18, 1971, plaintiff was committed to the custody of the Warden, Manhattan House of Detention for Men, to be held in lieu of bail, to insure his future appearance before the Courts. Upon plaintiff's arrival at the Tombs, he was given a physical examination by a Doctor, given a clean bill of health and placed in a cell. On May 10, 1971, by order of the Court, plaintiff was transferred to Kings County Hospital for mental evaluation. Again, he was examined by physicians and given a clean bill of health. On June 4, 1971, plaintiff was returned to the Tombs. He was placed on the tenth floor (this floor being used for detoxification of drug addicts). However, the plaintiff did not belong on the tenth floor, because he has never used narcotics in his life. After being on the tenth floor for about a week, the entire floor was transferred to the ninth floor. This floor was dirty, unsanitory [sic] and rat infested. On or about the 15th day of June, 1971, plaintiff filed a hand written writ of habeas corpus to the Hon. Vito J. Titone, J.S.C., of the Richmond County Supreme Court, complaining of cruel and unusual punishment. However, this application was never answered, but, the plaintiff was removed from the ninth floor, and placed in general population. While on the ninth floor, plaintiff witnessed several very sick men, including yellow jaundice. Plaintiff feels that during his incarceration on the ninth floor, he contracted TUBERCULOSIS. Plaintiff was to remain in general population until January 14, 1972, at which time he was transferred to the Riker's Island Hospital because of the aforementioned illness."

It is unclear exactly how long the plaintiff actually remained on the ninth floor.

The plaintiff contends that by contracting tuberculosis under these conditions he was deprived of his rights under the Eighth and Fourteenth Amendments. Jurisdiction is alleged under 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331. Damages are sought in the amount of $50,000. The Corporation Counsel has moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) on behalf of the City Department of Correction and asks that the motion be granted in favor of all defendants.

The Corporation Counsel denies that the plaintiff contracted tuberculosis at the Tombs. He cites a letter of Dr. Henry Feibes dated February 17, 1972 that Waltenberg "has been suffering from chronic pulmonary T.B.C. far advanced. There are tubular changes in both upper lung fields with small cavitations. Sputum smear revealed 2+ tuberculi bacilli. Therefore John Waltenberg has been suffering from pulmonary T.B.C. far advanced active."

The Corporation Counsel infers from this letter that this stage of tuberculosis could not have developed as a result of a short period on the ninth floor. This is not, however, a motion for summary judgment. And the Corporation Counsel has not proffered an affidavit from Dr. Feibes. For purposes of this motion, the Court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Church v. Hegstrom, 416 F.2d 449, 450 (2 Cir. 1969).

 Insofar as the defendant Department of Corrections is concerned, it is merely one of several departments and agencies that comprise the municipality of the City of New York and as such is not a "person" within the meaning of 42

U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Curran v. Lee, 484 F.2d 1348 (2 Cir. 1973). Nonetheless, the Department must remain a defendant under 28 U.S.C. § 1331, since the jurisdictional amount of over $10,000 is alleged. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

With respect to the former Mayor, absolute immunity may not be available as a blanket defense. Scheuer v. Rhodes, — U.S. —, 94 S.Ct. 1683, 40 L.Ed.2d 90, 42 U.S.L.W. 4543 (1974). But he does remain protected by a qualified privilege. "[I]n varying scope, a qualified privilege is available to officers of the executive branch of the Government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appear at the time of the action on which liability is sought to be based." (Id. 42 U.S.L.W. at 4548 [94 S.Ct. at 1692]), The complaint contains no allegations which would subject the former Mayor to personal liability for the injuries purportedly suffered. In Church v. Hegstrom, 416 F.2d 449 (2 Cir. 1969), the Court delineated the requisites of a claim alleging violations of the Eighth Amendment under the Civil Rights Act. It held that dismissal was proper when "[t]here was no specific allegation that any of these defendants knew that treatment was required for the preservation of Church's life, that Church ever requested such treatment, or even that any defendant was aware of his condition." (416 F.2d at 450). In the instant case the complaint does allege that the plaintiff filed a writ of habeas corpus complaining of the very conditions which he now charges were the cause of his tuberculosis. This, I think, would constitute sufficient notice at least to the Warden

(and former Commissioner if he was named in the writ) for purposes of the *Church* rule. It does not, however, permit an inference of any knowledge by the former Mayor since he would not have been a party to the *habeas* action. The complaint against the former Mayor is dismissed.

What remains unclear is how long the plaintiff was detained on the ninth floor after "on or about June 15, 1971" when he allegedly instituted his petition for a writ of habeas corpus. It is true that, as to the Warden and ex-Commissioner, an allegation of "mere negligence" in failing to supply medical attention will not suffice, Church v. Hegstrom, *supra*, 416 F.2d at 451. But where prison officials are formally put on notice of the complained conditions, a decision not to remove a prisoner in these circumstances after being given notice of the condition by the filing of a petition for writ of habeas corpus might be a wilful act and might subject the prison officials to liability. See Martinez v. Mancusi, 443 F.2d 921 (2 Cir. 1970). See Church v. Hegstrom, *supra;* Wright v. McMann, 387 F.2d 519 (2 Cir. 1967), appeal from remand, 460 F.2d 126 (2 Cir. 1972).

Good faith will, of course, remain a valid defense to the Warden and ex-Commissioner, Scheuer v. Rhodes, *supra*, 42 U.S.L.W. at 4548–4549 [94 S.Ct. 1683]; Anderson v. DeCristofalo, 494 F.2d 321 (2 Cir. 1974). And the allegation that the confinement was proximate cause of the tuberculosis remains to be proved.

Accordingly, the motion to dismiss with respect to former Mayor John V. Lindsay is granted. The motion to dismiss on behalf of the Department of Corrections, Warden and ex-Commissioner of Corrections is denied.*

The plaintiff's request for appointment of counsel is denied.

---

* Since it appears that the warden has not been served because he has moved since his retirement, the action may be subject to dismissal as to him for want of prosecution after an appropriate period. Also, the record does not reveal whether the Commissioner was named in the *habeas* petition.