Benjamin SANABRIA, Plaintiff,

v.

The VILLAGE OF MONTICELLO, a Municipal Subdivision of the State of New York, et al., Defendants.

No. 75 Civ. 1070 (JMC).

United States District Court, S. D. New York.

Dec. 23, 1976.

---

**404**

Gerald Orseck, Liberty, N.Y., for plaintiff.

Morris, Duffy, Ivone & Jensen, New York City (John E. Morris, New York City, of counsel), for defendants Community General Hospital and Young Chul Ko.

Appelbaum & Eisenberg, Liberty, N.Y. (Harold J. Bauman, Liberty, N.Y., of counsel), for defendant Village of Monticello.

Weiss & Costa, Monticello, N.Y. (Lawrence E. Lagarenne, Monticello, N.Y., of counsel), for defendant Bernard Blackman.

Aks & Tieger, Monticello, N.Y. (Jacob Aks, Monticello, N.Y., of counsel), for defendant Louis Gonzalez.

Garbarini, Scher & DeCicco, New York City (Leonard Weinstock, New York City, of counsel), for defendant Isidore Greenberg.

John S. McBride, Monticello, N.Y., for defendant Harry Lawrence.

Goldstein & Goldstein, Monticello, N.Y. (Carl P. Goldstein, Monticello, N.Y., of counsel), for defendant John McCormick.

Joseph Gold, Monticello, N.Y., for defendant Walter Ramsey.

Raskin & Rappaport, New York City (Lester Raskin, New York City, of counsel), for defendant Edward McManus.

## OPINION AND ORDER

CANNELLA, District Judge:

Plaintiff's motion to file a second amended complaint, and the motions to dismiss interposed by defendants Community General Hospital, Isidore Greenberg and Young Chul Ko are granted. The motions to dismiss the complaint made by Harry Lawrence, John McCormick, Bernard Blackman, Louis Gonzalez, Walter Ramsey and Edward McManus are denied.

The within action was commenced on March 4, 1975 against the Village of Monticello ("Village") and its employees, officers and police officers, Community General Hospital, Young Chul Ko and Isidore S. Greenberg. Plaintiff's complaint makes the following factual allegations:

1. Plaintiff, while intoxicated, was involved in an automobile accident in Monticello, New York at approximately 12:00 midnight on October 21, 1974.

2. As a result of his intoxication, the plaintiff was unable to care for himself.

3. After the accident, he was arrested by police officers employed by the Village of Monticello and taken into their custody.

4. During the accident, plaintiff suffered certain injuries, including a broken neck. Defendant police officers knew that plaintiff had suffered a broken neck.

5. Plaintiff was taken to Community General Hospital, where he was refused treatment and returned to the Monticello jail.

6. He was confined at the jail from 12:40 a. m. until 9:15 a. m. on October 22, 1974 without medical aid or assistance, although his need for such attention and the substantial nature of his injuries were obvious and known to defendant police officers.

7. During this time, plaintiff was physically abused by defendant police officers, seriously and irreversibly aggravating his injuries.

8. As a result of the injuries intentionally caused by defendants' physical abuse, and by the failure to diagnose and promptly treat plaintiff's pre-existing injuries, plaintiff became paralyzed and suffered other serious injuries.

█ Federal jurisdiction was asserted on the basis of the Civil Rights Act, specifically 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3); diversity of citizenship;[1] and, with respect to defendant Village, the· doctrine of pendent jurisdiction. Thereafter, "The Village of Monticello and its police officers" moved to dismiss the complaint based upon the Court's lack of jurisdiction over the subject matter. In its decision of March 3, 1976, this Court concluded that the complaint alleged a valid cause of action under Section 1983 against the defendant police officers, and that the Village of Monticello was subject to jurisdiction as a "pendent party."[2] *Sanabria v. The Village of Monticello*, 75 Civ. 1070 (S.D.N.Y. March 3, 1976) (Cannella, J.).

Plaintiff subsequently moved for and was granted leave to amend the complaint to name individually the police officers of the Village of Monticello alleged to have participated in the events giving rise to plaintiff's injuries.[3]

A slight respite followed, after which the Court was deluged with sundry motions brought by the parties herein. The Court will deal with these motions seriatim.

## MOTION OF DEFENDANTS HARRY LAWRENCE, JOHN McCORMICK, BERNARD BLACKMAN, LOUIS GONZALEZ, WALTER RAMSEY AND EDWARD McMANUS TO DISMISS ON THE BASIS OF THE STATUTE OF LIMITATIONS

█ In an action brought in federal court under the Civil Rights Act the statute of limitations to be applied is "the most appropriate one provided by state law." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *accord, Runyon v. McCrary*, 427 U.S. 160, 179–184, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Plaintiff maintains that Second Circuit decisions applying the three year limitations period on N.Y.C.

---

1. Plaintiff has since withdrawn his contention that diversity jurisdiction is present in the instant case.

2. On June 24, 1976, the Supreme Court held that the doctrine of pendent jurisdiction may not be applied to join as a party to a federal civil rights action a municipal corporation as to which there existed no independent basis of federal jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Accordingly, so much of this Court's prior decision as held defendant Village subject to jurisdiction on the pendent party theory is hereby vacated.

3. Although plaintiff originally captioned his action

BENJAMIN SANABRIA,

Plaintiff,

—against—

THE VILLAGE OF MONTICELLO, a municipal subdivision of the State of New York, and its employees, officers and police officers, COMMUNITY GENERAL HOSPITAL, YOUNG CHUL KO and ISIDORE S. GREENBERG,

Defendants.

and demanded damages from the "defendant police officers," he failed to name the officers individually in the complaint until granted leave to do so on March 30, 1976.

P.L.R. § 214(2)[4] in a federal civil rights case are dispositive of the issue herein. *Kaiser v. Cahn,* 510 F.2d 282, 284 (2d Cir. 1974); *Romer v. Leary,* 425 F.2d 186 (2d Cir. 1970). The Court agrees. Although the defendant police officers take the position that New York General Municipal Law § 50–j, which makes the one-year and ninety-day limitation period of General Municipal Law § 50–i applicable to suits against police officers for negligent acts or torts, is the relevant state statute,[5] at the time of the incidents involved herein Section 50–j applied only to cities "having a population of one million or more."[6] Its amendment to include "every city, county, town, village, authority or agency" was effective beginning August 9, 1975, well after plaintiff's cause of action accrued.

■ Under New York law statutes of limitations are given *prospective* application unless a contrary intent is clearly indicated. *People v. Cohen,* 245 N.Y. 419, 421, 157 N.E. 515 (1927); *Hastings v. H. M. Byllesby & Co.,* 265 App.Div. 653, 40 N.Y.S.2d 307 (1st Dep't 1943), *aff'd,* 293 N.Y. 413, 57 N.E.2d 737 (1944); *New York Central R.R. v. Erie R.R.,* 30 Misc.2d 362, 213 N.Y.S.2d 15, 24 (Sup.Ct. N.Y. County 1961); *Ilott v. Deibert,* 19 Misc.2d 564, 195 N.Y.S.2d 405 (Sup.Ct. N.Y. County 1959), *reversed on other grounds,* 11 A.D.2d 980, 207 N.Y.S.2d 991 (1st Dep't 1960). *Cf. Kelly v. Yannotti,* 4 N.Y.2d 603, 605–06, 176 N.Y.S.2d 637, 640, 152 N.E.2d 69 (1958) (amendment to Civil Practice Act § 592(2) shortening time to move for leave to appeal does not apply to orders entered prior to the effective date). Thus, the former statute of limitations remains applicable to a cause of action that accrued prior to the change in the law. *Buckley Petroleum Products, Inc. v. Goldman,* 28 A.D.2d 640, 280 N.Y.S.2d 876 (4th Dep't 1967); *Mannheimer v. Keehn,* 30 Misc.2d 584, 41 N.Y.S.2d 542, 552–53 (Sup.Ct. Monroe County 1943), *modified,* 268 App.Div. 813, 49 N.Y.S.2d 304, *amended,* 268 App.Div. 845, 51 N.Y.S.2d 750 (4th Dep't 1944).

Accordingly, the three-year limitation period ordinarily applicable to civil rights actions and not the more specific provisions of General Municipal Law § 50–j controls here. In that plaintiff was granted leave to amend the complaint to name the defendant police officers on March 30, 1976, less than three years after the occurrence of the incidents complained of, the Court finds that the instant action is not barred by the statute of limitations.

## PLAINTIFF'S MOTION TO JURISDICTIONALLY AMEND THE COMPLAINT

*Jurisdiction over the Defendant Municipality*

After the Supreme Court's decision in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), (see note 2, *supra* ), plaintiff moved to further amend the complaint to assert jurisdiction against the Village of Monticello pursuant to 28 U.S.C. § 1331(a). The Village opposes the

---

4. This section is applicable to actions to recover on a liability created by statute.

5. Section 50–j. Liability of police officers for negligence in the performance of duty

. . . . .

3. No action or special proceeding instituted hereunder shall be prosecuted or maintained against the municipality, authority or agency concerned or such police officer unless notice of claim shall have been made and served upon such municipality, authority or agency in compliance with section fifty–e of this chapter. Every such action shall be commenced pursuant to the provisions of section fifty–i of this chapter.

Section 50–i provides, in pertinent part:

No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof . . . unless . . . *the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based.* [Emphasis added.]

6. The Court takes judicial notice of the fact that the Village of Monticello has a population of less than one million.

amendment, and therefore federal jurisdiction over it, contending that plaintiff's claim is not one which "arises under the Constitution" of the United States. 28 U.S.C. § 1331(a).

Of course, where the amount in controversy exceeds $10,000,[7] a complaint seeking recovery under the Constitution properly invokes federal subject matter jurisdiction over a municipality. *Brault v. Town of Milton*, 527 F.2d 730, 736 (2d Cir. 1975) (en banc); *Hostrop v. Board of Junior College Dist. No. 515*, 523 F.2d 569 (7th Cir. 1975), *cert. denied*, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Construction Indus. Ass'n v. City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975), *cert. denied*, 424 U.S. 984, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976); *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803, 805 (9th Cir. 1975); *Calvin v. Conlisk*, 520 F.2d 1, 8–10 (7th Cir. 1975), *vacated on other grounds*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); *Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir. 1975); *Traylor v. City of Amarillo*, 492 F.2d 1156, 1157 n.2 (5th Cir. 1974). *See City of Kenosha v. Bruno*, 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (Brennan, J., concurring); *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, the Village contends that plaintiff's invocation of the eighth and fourteenth amendments is frivolous, done merely to establish federal court jurisdiction. The Court finds this argument unconvincing.

The deprivation of medical care to a prisoner has been considered both a denial of due process as guaranteed by the fourteenth amendment, *Reeves v. City of Jackson*, 532 F.2d 491, 495 (5th Cir. 1976); *Fitzke v. Shappell,*, 468 F.2d 1072, 1074–77 (6th Cir. 1972); *Church v. Hegstrom,* 416 F.2d 449, 450 (2d Cir. 1969), and a violation of the eighth amendment right to be free from cruel and unusual punishment, *Estelle*

*v. Gamble*, —— U.S. ——, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Reeves, supra*, 532 F.2d at 495; *Martinez v. Mancusi*, 443 F.2d 921, 923 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971); *Church v. Hegstrom*, 416 F.2d 449, 451 (2d Cir. 1969).[8] In any event, it is beyond peradventure that the Constitution affords protection for a state prisoner's right to medical care. Accordingly, plaintiff's claims herein do arise under the Constitution, and federal subject matter jurisdiction is properly invoked under 28 U.S.C. § 1331(a).

## Availability of Damages against the Defendant Municipality

Having determined that there is federal subject matter jurisdiction over the within action, the Court must confront the issue of whether plaintiff's complaint states a claim against the defendant Village upon which relief can be granted.

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court ruled that the Constitution itself gives rise to a cause of action in damages to redress the deprivation by a federal officer of a constitutionally guaranteed right, without regard to the absence of a statutorily created cause of action such as that embodied in 42 U.S.C. § 1983. Such an action "arises under the Constitution," 28 U.S.C. § 1331, and is cognizable in federal court when more than $10,000 is in controversy. 403 U.S. at 398, 91 S.Ct. 1999 (Harlan, J., concurring). Although the Second Circuit has twice refused to rule on whether like reasoning would apply to suits for damages against municipalities where there likewise are no statutory remedies, *Fine v. City of New York*, 529 F.2d 70, 76 (2d Cir. 1975); *Brault v. Town of Milton*, 527 F.2d 730, 736 (2d Cir. 1975) (en banc); *but see Brault v.*

---

**7.** Defendants have not challenged plaintiff's assertion that there is more than $10,000 in controversy in the instant action.

**8.** Particularly appropriate are *Reeves v. City of Jackson*, and *Fitzke v. Shappell*, which involve

individuals allegedly denied medical attention and incarcerated after automobile accidents.

*Town of Milton,* 527 F.2d 730 (2d Cir. 1975) (panel decision), numerous other courts have entertained, pursuant to Section 1331(a), suits against municipalities for money damages brought directly under the Constitution.[9] *E.g., Reeves v. City of Jackson,* 532 F.2d 491, 495 (5th Cir. 1976) (claim against the City of Jackson for the grossly inadequate medical care provided by its police officers); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975) (action for damages brought against the County of Washington for deprivation of complainant's thirteenth and fourteenth amendment rights); *Hostrop v. Board of Junior College Dist. No. 515,* 523 F.2d 569, 576–77 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976) (municipal corporation answerable for violation of individual's procedural due process rights); *Gray v. Union County Intermediate Educ. Dist.,* 520 F.2d 803 (9th Cir. 1975) (semble) (enforcing first amendment rights against a political subdivision of the state under 28 U.S.C. § 1331(a)); *Hanna v. Drobnick,* 514 F.2d 393, 398 (6th Cir. 1975) (municipality liable in damages for searches conducted pursuant to a building inspection ordinance that violated the fourth amendment); *Shifrin v. Wilson,* 412 F.Supp. 1282, 1305 (D.D.C.1976) (municipalities "can be held liable in actions for deprivation of constitutional rights" occasioned by its police officers); *Waltenberg v. New York City Dep't of Correction,* 376 F.Supp. 41 (S.D.N.Y.1974) (Gurfein, J.) (action brought against municipal agency for acts of its officers in violation of the constitutional protection against cruel and unusual punishment).

9. There seems to be no question that this remedy exists for violations of the just compensation clause of the fifth amendment. *See, e.g., Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); *Sayre v. Cleveland,* 493 F.2d 64 (6th Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974); *Foster v. City of Detroit,* 405 F.2d 138, 144 (6th Cir. 1968). This is attributable, however, to the particular nature of the clause, which in and of itself provides for a damage remedy.

10. 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *Monroe* held that a municipality may

■ The issue is by no means free from controversy, however, as a number of federal courts have concluded that the Supreme Court's pronouncements in *Monroe v. Pape*[10] and *City of Kenosha v. Bruno*[11] have foreclosed federal damage remedies against municipalities. *Perry v. Linke,* 394 F.Supp. 323, 326 (N.D.Ohio 1974); *Jamison v. McCurrie,* 388 F.Supp. 990 (N.D.Ill.1975); *Smetanka v. Borough of Ambridge,* 378 F.Supp. 1366, 1377–78 & n.2 (W.D.Pa.1974) (alternative ground); *Perzanowski v. Salvio,* 369 F.Supp. 223, 228–30 (D.Conn.1974); *Payne v. Mertens,* 343 F.Supp. 1355, 1358 (N.D.Cal.1972). *See also Brault v. Town of Milton,* 527 F.2d 730, 735–36 (2d Cir.) (Timbers, J., dissenting from panel opinion), *vacated on other grounds, id.* at 736 (1975) (en banc); *Snead v. Department of Social Services,* 409 F.Supp. 995, 1001 (S.D.N.Y.1975) (three-judge court) (Mulligan, J., concurring in the result). After considering the factors deemed controlling by the aforementioned cases, this Court concludes that the holdings in *Monroe* and *City of Kenosha* stem from the unique legislative history of the Civil Rights Act, and that municipal liability under the Constitution will not "vitiate the Congressional mandate of 42 U.S.C. § 1983." *Payne v. Mertens,* 343 F.Supp. at 1358.

■ The factor invariably cited in support of decisions finding federal damage remedies against municipalities foreclosed by *Monroe* and *City of Kenosha* is the congressional judgment that municipalities should not be liable in damages.[12] For example, in *Perry v. Linke,* 394 F.Supp. 323

not be held liable for damages under 42 U.S.C. § 1983.

11. 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The Supreme Court therein extended the holding of *Monroe* to equitable relief.

12. For a discussion of whether Congress even has the power to bar an award of damages against a municipality for a constitutional violation, see Note, *Damage Remedies Against Municipalities For Constitutional Violations,* 89 Harv.L.Rev. 922, 935–39 (1976).

(N.D.Ohio 1974), the court refused to extend the *Bivens* rationale to like suits against municipalities for acts of their law enforcement agents. Unlike the situation presented in *Bivens,* where there would have been no civil remedy for the allegedly unconstitutional acts of the federal agents absent an implied one, the *Perry* court found an express right of redress for constitutional violations that Congress had limited to actions brought against state officers in their individual capacities. 394 F.Supp. at 326. This Court is not persuaded by such reasoning. Nowhere in *Bivens* did the Supreme Court indicate that it was merely plugging a gap in the remedies provided by civil rights legislation. On the contrary, the Court was compelled by the need to afford a remedy "where federally protected rights have been invaded." 403 U.S. at 392, 91 S.Ct. at 2002. This Court can see no less a need for the availability of an appropriate remedy where a municipality has violated the constitutional rights of an individual than where those same rights have been infringed by a federal officer acting under color of his authority.

Nor is the Court confronted herein with an "explicit congressional declaration that persons injured by a . . . violation of the [Constitution] may not recover money damages from the [municipality], but must instead be remitted to another remedy, equally effective in the view of Congress." *Bivens, supra,* 403 U.S. at 397, 91 S.Ct. at 2005. For, as stated above, municipal immunity from suits under 42 U.S.C. § 1983 stems from the unique legislative history of the Act. *See City of Kenosha v. Bruno,* 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (Brennan, J., concurring). Certain members of the House of Representatives did voice opposition to provisions of the Civil Rights Act that would have subjected municipalities to liability for damages,

pointing to the devastating effect such damages might have on municipalities. Those provisions, however, were exceedingly broad in that a municipality could have been held liable thereunder for *any* offense committed within its borders "with intent to deprive any person of any right conferred upon him by the Constitution and laws of the United States, or to deter him or punish him for exercising such right, or by reason of his race, color or previous condition of servitude . . . ." [13] By virtue of the proposed amendments, liability would have extended to actions of persons over whom the municipality had no control. Municipal liability under the Constitution, on the other hand, results in damages solely for acts of the municipality *qua* municipality, or those of its officers,[14] a much more limited exposure. Moreover, the various types of immunity available to municipal employees and officials in actions commenced pursuant to Section 1983 and the Constitution, *see, e.g., Wood v. Strickland,* 420 U.S. 308, 314–18, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 238–49, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 553–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), render an implied remedy against municipalities, such as that found in *Bivens,* essential to the complete protection of federally created rights.

Thus, mindful of the caution of the *Bivens* Court that some situations may be characterized by "special factors counselling hesitation" in fashioning a remedy for constitutional violations, 403 U.S. at 396, 91 S.Ct. at 2005, this Court finds a cause of action in damages against a municipality available to an individual who has suffered a constitutional deprivation. The Court does not find in *Monroe* or *Kenosha* the general assertion that a municipality may

---

**13.** Cong. Globe, 42d Cong., 1st Sess. 663, 749. In concluding that this expression of congressional intent was directed solely at the proposed amendments, some courts have gone so far as to hold a municipality subject to liability under 42 U.S.C. § 1981, a companion of § 1983. *E.g., Robinson v. Conlisk,* 385 F.Supp. 529, 535

& n.5 (N.D.Ill.1975); *Maybanks v. Ingraham,* 378 F.Supp. 913, 916 (E.D.Pa.1974).

**14.** For a discussion of respondeat superior liability of a municipality under the Constitution, see notes 16–18 and accompanying text, *infra.*

never be sued for deprivations of constitutional rights.[15]

*Applicability of the Doctrine of Respondeat Superior to Suits against Municipalities Brought Directly under the Constitution*

■ In considering the availability of a damage remedy against a municipality directly under the Constitution, at least one court has distinguished between liability imposed under the fourteenth amendment for acts of the governmental unit itself and liability imposed vicariously for activities of its employees or officials. *See Fine v. City of New York,* 529 F.2d 70, 76 (2d Cir. 1975). It may therefore be appropriate to hold a governmental sub-unit liable for damages due to its governmental actions,[16] and yet inappropriate to impose liability because of acts committed by its employees or officers. It is the opinion of this Court, however, that the doctrine of respondeat superior should apply to misconduct of municipal functionaries in carrying out governmental operations.

■ Although the doctrine of respondeat superior is not applicable to claims under 42 U.S.C. § 1983, *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick,* 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971), substantially different considerations apply where municipal liability is involved.[17] Thus, numerous courts have held, in cases involving alleged constitutional violations, that municipalities may be held liable for the misconduct of its officials under the doctrine. *Reeves v. City of Jackson,* 532 F.2d 491, 495 (5th Cir. 1976); *Shifrin v. Wilson,* 412 F.Supp. 1282, 1306–08 (D.D.C. 1976); *Collum v. Yurkovich,* 409 F.Supp. 557, 559 (N.D.Ill.1975); *Williams v. Brown,* 398 F.Supp. 155, 158–60 (N.D.Ill.1975); *Waltenberg v. New York City Dep't of Correction,* 376 F.Supp. 41 (S.D.N.Y.1974) (Gurfein, J.). *Contra, Smetanka v. Borough of Ambridge,* 378 F.Supp. 1366, 1377 n.2 (W.D. Pa.1974).

In *Reeves v. City of Jackson, supra,* the Fifth Circuit analyzed a set of facts similar to the one presently before the Court. The plaintiff therein alleged that he was found unconscious, slumped over the steering wheel of his car, by two Jackson City police officers and that the officers arrested him, thinking he was intoxicated, and took him to the city jail where he remained unconscious for twenty-two hours. No attempt was made to determine whether plaintiff was ill, and no medical care was administered. On these facts plaintiff commenced an action against the city for false arrest, false imprisonment and failure to give adequate medical treatment. The district court dismissed the complaint for failure to state a claim upon which relief could be granted. The court of appeals reversed, finding that the alleged provision of grossly inadequate medical care by the individual police officers stated a claim against the municipal employer directly under the Constitution and 28 U.S.C. § 1331(a)

■ This Court agrees that in an action brought under the fourteenth amendment,

---

**15.** In fact, the *Monroe* Court specifically avoided evaluation of policy arguments regarding municipal liability. 365 U.S. at 191, 81 S.Ct. 473.

**16.** For example, for actions resulting in the taking of property without just compensation, see note 12 *supra,* or those involving the municipality as an employer, *e.g., Hostrop v. Board of Junior College Dist. No. 515,* 523 F.2d 569 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Gray v. Union County Intermediate Educ. Dist.,* 520 F.2d 803 (9th Cir. 1975); *Skehan v. Trustees of Bloomsburg State College,* 501 F.2d 31 (3d Cir.

1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

**17.** Application of respondeat superior principles in § 1983 actions would result in liability of *officials* for actions of their subordinates who were not performing services for their benefit, but for the benefit of the municipality. Where respondeat superior liability of a *municipality* is involved (which, of course, cannot be the case under 1983) this consideration operates in favor of application of the doctrine.

which is expressly directed at state action, a municipality should be answerable for the constitutional infringements of its employees. In such a situation, the need for a defendant capable of responding in damages to a plaintiff who has been deprived of a right guaranteed by the Constitution outweighs the need to protect the municipal coffers. As stated by Judge Marshall in *Williams v. Brown,*

> It would be irrational to hold a municipality immune from liability under the very part of the Constitution enacted to meet the perceived need for a federal means of limiting the abuse of individual rights by municipalities and other repositories of state power as they acted through their employees . . . .[18]

398 F.Supp. at 159.

## MOTION OF DEFENDANTS GREENBERG, YOUNG AND COMMUNITY GENERAL HOSPITAL TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

 The claims against defendants Isidore Greenberg, Young Chul Ko and Community General Hospital founder upon the requirement of § 1983 that the complained of activities be "under color of state law." Indeed, private parties who act in conjunction with state officials may be liable under § 1983, although they are not themselves state officials. *Adickes v. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The actions of non-state officials, however, "cannot comprise state action unless [such defendants] were willful participants in joint activity with the State or its agents." *Buck v. Board of Elections,* 536 F.2d 522, 524 (2d Cir. 1976). *Accord, Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir. 1975); *see United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

 The only possible connection between the medical defendants herein and state authority is the allegation that, for a

period of forty minutes during the morning of October 22, 1974, the police officers placed plaintiff in the medical defendants' custody for medical treatment. The record is barren of any assertion that the non-state defendants were acting in complicity with the state officials, or pursuant to a common design to deprive plaintiff of his constitutional rights. Moreover, there is nothing before the Court to indicate that the alleged lack of medical care was the result of concerted activity on the part of the police officers and medical personnel. Thus, even if Community General Hospital, Greenberg and Young failed to administer proper medical care to plaintiff, they did not do so "under color of state law."

## CONCLUSION

The motions of Bernard Blackman, Louis Gonzalez, Walter Ramsey, Harry Lawrence, Edward McManus and John McCormick are hereby denied. As to defendants Community General Hospital, Young Chul Ko and Isidore Greenberg, the complaint is dismissed.

Plaintiff is directed to file a second amended complaint within seven days.

SO ORDERED.

---

**18.** It has also been noted that "[d]amage liability of a municipality for the unconstitutional acts of its employees is particularly appropriate in the area of police misconduct." *Williams v. Brown,* 398 F.Supp. 155, 159 (N.D.Ill.1975).